# FIDELITY-PHENIX FIRE INS. CO. v. CLEVE-LAND et al.

No. 6439.   Opinion Filed February 8, 1916.

Rehearing Denied February 18, 1916.

(156 Pac. 638.)

1.  **INSURANCE—Liability of Insurer—Extent.**  Under what we call the ordinary or commercial loss payable clause, attached to policies of insurance, in substance, that "loss, if any, payable to ——, mortgagee, as his interest may appear at the time of loss," where no other stipulations appear, defining the interest of the mortgagee, there is a contract created between the insurer and the mortgagee, but it is merely collateral to the principal undertaking to pay the mortgagor; the mortgagee is merely an appointee of the fund, with rights dependent upon, and no greater than, those of the insured.  If the policy becomes void, so it cannot be collected by the insured, the rights of the mortgagee likewise fail.

2.  **SAME.** The clause, attached to an insurance policy, usually called the "Union" or "Standard" mortgage clause, providing, in substance: "Loss, if any, payable to——, mortgagee, as hereinafter provided: it being hereby understood and agreed that this insurance as to the interest of the mortgagee only herein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured. * * * provided, that in case the mortgagor or owner neglects or refuses to pay any premium, * * * then, on demand, the mortgagee shall pay same * * * "—creates an independent contract of insurance for the separate protection and benefit of the mortgagee.  The fact that it is ingrafted on the contract of insurance contained in the policy issued to the owner and mortgagor does not affect its independent nature. except that reference will be had to the main body of the policy, to make the clause certain and effective.  Under such clause. the mortgagee may maintain a suit in his own name to recover for a loss covered by the policy, and such cause of action cannot be defeated by "any act or neglect of the owner or mortgagor of the property insured."

3.  **INSURANCE—Contracts—Requisites.**  Where pursuant to agreement between the agent of an insurance company, who has power to countersign and issue policies, and a mortgagee of the property insured, a "Union" or "Standard" mortgage clause is executed and signed by the agent and recorded in the record of the particular policy in the policy registry book of the company, such

clause is effective as between the company and the mortgagee, although it is not physically attached to the policy delivered to the owner or mortgagor.

(Syllabus by Brewer, C.)

*Error from Superior Court, Garfield County;*
*Dan Huett, Judge.*

Action by James G. Cleveland and others against the Fidelity-Phenix Fire Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Scothorn, Caldwell & McRill,* for plaintiff in error.

*John C. Moore* and *F. E. Chappell,* for defendants in error.

Opinion by BREWER, C. This is a suit by James G. Cleveland and J. W. Rice, as plaintiffs below, against the plaintiff in error and one J. H. Cook, to recover, as mortgagees, the amount named in a certain policy of insurance. A recovery for the full amount was had.

The material facts, briefly summarized, are: One D. L. Cleveland owned certain town lots in the city of Enid, upon which stood a livery barn, and sold same to J. H. Cook, receiving some cash, and two notes for $700 each, due in 12 and 18 months respectively, as consideration. The notes were secured by a mortgage on the lots and barn, executed by Cook to D. L. Cleveland. The mortgage contained a covenant to maintain insurance on the barn in favor of the mortgagee in a sum not less than $800, and a policy and one or more renewals were procured by Cook with a clause protecting the mortgagee attached. Later, D. L. Cleveland sold and transferred one of the notes to James G. Cleveland, and one to J. W. Rice, the plaintiffs. He also went to the agent of the defendant insurance company, who had issued the policies, and inter-

viewed him about assigning the notes and mortgage, and was assured that the insurance would protect such assignees. He then executed and acknowledged same before the insurance agent, who was also a notary public. When the insurance then in force expired, a renewal policy, the one sued on, was issued and delivered to Cook, but the mortgage clause was not physically attached to the policy, but was executed, shortly thereafter, by the agent, and attached to the company's registry record of that particular policy, and a copy sent to the company. The clause was what is known as the "Union" or "Standard" mortgage clause, and is as follows:

"Mortgage Clause. (To be attached only to policies covering in whole or in part real property.)

"Loss, if any, payable to D. L. Cleveland, mortgagee or trustee or successor in trust as hereinafter provided.

"It being hereby understood and agreed, that this insurance as to the interest of the mortgagee or trustee only herein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for the purposes more hazardous than are permitted by the terms of this policy.

"Provided, that in case the mortgagor or owner neglects or refuses to pay any premium under this policy, then, on demand, the mortgagee or trustee shall pay the same.

"Provided also, that the mortgagee or trustee shall notify the company of any change of ownership or increase of hazard which shall come to his, or their knowledge and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy.

"And provided further, that every increase of hazard not permitted by the policy to the mortgagor or owner shall be paid for by the mortgagee or trustee or reason-

able demand and after demand made by this company upon, and refusal by the mortgagor or owner to pay, according to the established schedule of rates. It is, however, understood that this company reserves the right to cancel this policy as stipulated in the printed conditions in said policy; and also to cancel this agreement on giving ten days' notice of their intention to the trustee or mortgagee named therein, and from and after the expiration of said ten days this agreement shall be null and void.

"It is further agreed that in case of any other insurance upon the property hereby insured, then this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property, issued or held by any party or parties having an insurable interest therein.

"It is also agreed that whenever this company shall pay the mortgagee or trustee any sum for loss under this policy and shall claim that as to the mortgagor or owner, no liability therefor exists, it shall at once, and to the extent of such payment, be legally subrogated to all the rights of the party to whom such payments shall be made, under any and all securities held by such party for the payment of said debt. But such subrogation shall be made in subordination of the claim of said party for the balance of the debt so secured. Or said company may, at its option, pay the said mortgagee or trustee, the whole debt so secured, with all the interest which may have accrued thereon to the date of such payment, and shall thereupon receive from the party to whom such payment shall be made, an assignment and transfer of said debt, with all the securities held by said parties for the payment thereof. Attached to and forming a part of policy No. 2008, issued at Enid, Oklahoma. Agency of the Fidelity-Phenix Fire Insurance Company of New York. Dated January 24, 1912.

"[Signed]    J. E. McCarty, *Agent*."

With this condition as to the insurance existing, the property was totally destroyed by fire. Cook notified the company, and its adjuster went on the ground and adjusted the loss with Cook, and agreed with him on an amount of damage and loss, far below the amount named in the policy. This was without the knowledge or participation of the holders of the mortgage, who, previous to the fire, had commenced foreclosure proceedings against Cook. Charges are made by plaintiffs of collusion between the insurance company and Cook to defraud plaintiffs out of any benefit under the insurance policy; and it looks very much like Cook, at least, sought to defraud them, and the adjuster admits he knew the situation as to the mortgage clause. But, as we see the case before us, the only questions that need consideration are: (1) Was the mortgage clause executed by the agent of the company, who had power to issue, countersign, and deliver policies, and attached to the registry record of this policy kept by the company, valid, without being physically attached to the policy delivered to the owner? (2) If valid, what is its proper construction as between the company and the mortgagee? We shall discuss these questions in reverse order.

In discussing the mortgage clause involved here, it is well to keep in mind that it is very different in its terms and provisions, and therefore in the obligation that it creates, from the ordinary commercial loss payable clause, frequently used for the benefit of mortgagees. That clause, that "the loss, if any, shall be payable to the mortgagee as his interest may appear, at the time of the loss," or words of similar import, where no other stipulation appears, defining the interest of the mortgagee, it has been generally held, creates a contract as to the mortgagee,

which is merely collateral to the principal undertaking to pay the mortgagor, and the mortgagee is merely an appointee of the fund, with rights dependent upon, and no greater than, those of the insured. In such case, if the policy becomes void, so that it cannot be collected by the insured, the rights of the mortgagee likewise fall. *Warbasse v. Sussex County Mut. Ins. Co.*, 42 N. J. Law, 203; *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N. Y. 391; *Hamburg-Bremen Fire Ins. Co. v. Ruddell*, 37 Tex. Civ. App. 30, 82 S. W. 826. See, also, for large list of cases, note to *Brecht v. Law Union & Crown Ins. Co.*, 18 L. R. A. (N. S.) 197.

However, under the clause involved here, it has been almost unanimously held that such clause creates an independent contract of insurance for the separate protection and benefit of the mortgagee; and the fact that it is ingrafted on the contract of insurance contained in the policy issued to the owner and mortgagor does not affect its independent nature, except that reference will be had to the main body of the policy, to the end that the clause be made certain and effective. Under such a clause made for the separate benefit of the mortgagee, such person can maintain a suit in his own name to recover for a loss covered by the policy; and, under the very terms of the clause, this right cannot be invalidated by "any act or neglect of the mortgagor or owner of the property insured." A very clear discussion of this clause and its effect and operation, is found in *Reed v. Firemen's Ins. Co.*, 81 N. J. Law, 523, 80 Atl. 462, 35 L. R. A. (N. S.) 343, as follows:

"It must be admitted that the mortgagee clause is not an independent contract in the sense that none of the

terms of the policy applies to it.   It is not in itself complete, but becomes so by reading the policy in connection with it, and the reading of the two together does not clash with the notion that the mortgage clause creates an independent contract between the company and the mortgagee.   The policy furnishes the terms of the contract between the owner and the insurer.   The mortgagee clause is the contract between the insurer and the mortgagee, quite separate from the policy, yet ingrafted upon it, and to be understood by reference to the policy, which renders it certain and complete.   The policy therefore may be looked at for the purpose of showing what the mortgagee contract refers to and establishes, which is quite different, however, from examining the policy for the purpose of defeating the ingrafted contract.   The Court of Appeals of New York, in *Eddy v. London Assur. Corp.*, 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686, referring to the mortgagee clause, says:   'The controlling idea was a separate insurance of the mortgagee, freed from the conditions attached to the insurance of the owner, and not to be impaired or weakened by any act or neglect of such owner.   * * *   By taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy which from their nature would properly apply to the case of an insurance of the mortgagee's interest would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee must be regarded as ineffective and inapplicable to the case of the mortgagee.' See, also, *Smith v. Union Ins. Co.*, 25 R. I. 260, 55 Atl. 715, 105 Am. St. Rep. 882."

The authorities on this subject will be found collected in notes to the following cases:   *Brecht v. Law Union & Crown Ins. Co.*, *supra*, and *Bacot v. Phenix Ins. Co.*,

25 L. R. A. (N. S.) 1226 (96 Miss. 223, 50 South. 729, Ann. Cas. 1912B, 262.)

2. Did the failure of the agent to attach the mortgage clause to the policy he sent to the owner defeat it as a contract between the company and the mortgagee? We think not. As has been seen, this was an independent contract between them, at least in a very substantial sense; and, when the clause was agreed upon and executed by the agent and attached in the policy registry record book, it became a valid enforceable contract between the company and the mortgagee. As we understand it, a complete duplicate of the policy can always be made up from this record, kept by the company. We have found no case on this specific point, and none has been cited. But whether authorities exist on the point we think unimportant, as it seems to us it needs none.

3. Some point is made on the admission of the evidence of the company's agent relative to the mortgage clause being shown in the policy register, and of the conversation between original mortgagee and the agent, relative thereto; but, under the views we have expressed as to the character and nature of this clause, as an independent contract for the benefit of the mortgagee, it would appear to follow that the evidence was competent.

Other points discussed in the brief we feel sure would not require a reversal, and are not of sufficient general concern to require discussion.

Upon the whole case, we think the judgment was just and warranted by law, and should therefore be affirmed.

By the Court: It is so ordered.