## SEABOARD FIRE & MARINE INS. CO. OF NEW YORK v. HINES et al.

### No. 5633.

Court of Civil Appeals of Texas. Texarkana.

July 5, 1940.

Rehearing Denied July 18, 1940.

Wilson & Reichman and E. M. Reichman, all of Dallas, and J. K. Brim, of Sulphur Springs, for appellant.

T. J. Ramey, William J. Fanning, and Vern D. Adamson, all of Sulphur Springs, for appellees.

JOHNSON, Chief Justice.

This suit was filed by C. J. Hines and H. V. Robinson against Seaboard Fire & Marine Insurance Company of New York upon a Texas standard form fire insurance policy issued to them by said company in the amount of $1,000, effective at and from noon April 22, 1932, until noon April 22, 1933, covering certain personal property comprising a barber shop owned and operated by plaintiffs in the city of Sulphur Springs, Texas, alleged to have been damaged and destroyed by fire on December 1, 1932. Defendant's answer contains a general denial and spe-cially alleges that on October 1, 1932, prior to the fire, defendant had cancelled the policy and given plaintiffs notice of such cancellation according to its terms. Plaintiffs replied to defendant's answer and denied that the policy had been cancelled or that they had received any such notice; and specially alleged that the annual premium had actually been paid to and received by the company and that the company could not legally and effectively cancel the policy without complying with its terms requiring (1) that the insured be given five days' written notice of such cancellation; and (2) returning to the insured the unearned portion of the premium. In a pleading termed "plaintiffs' first trial amendment" plaintiffs also alleged that W. G. Smith as agent of the defendant company in consideration of plaintiffs insuring with defendant had agreed to accept barber work to be performed by plaintiffs for Smith in payment of the annual premium of $18.25. Upon trial to a jury four questions were submitted. Questions 3 and 4 related to the amount of damages sustained as the result of the fire, each of which questions were answered by the jury, showing the amount to be $700. Questions 1 and 2 were not answered by the jury. Question 1 inquired as to whether W. G. Smith had agreed with plaintiffs to accept payment of the premium in barber work. Question 2 inquired as to whether W. G. Smith notified plaintiffs prior to December 1, 1932, that the policy had been cancelled. Upon the uncontradicted evidence and the jury's findings in answer to Questions 3 and 4 the court entered judgment for the plaintiffs. The defendant has appealed.

Appellant's contention in substance is that the court was not authorized to enter the judgment in the absence of jury findings to Questions 1 and 2, that is to say, that it was essential to entry of a judgment for appellees that the jury find in answer to Question 1 that Smith had agreed with plaintiffs to accept payment of the premium in barber work; and that the jury find in answer to Question 2 that Smith had not notified plaintiffs prior to the fire that the policy had been cancelled. Appellees' contention, in substance, is that findings of the jury in answer to Questions 1 and 2 were not essential to support a judgment for appellees, that is to say, that had the jury answered Questions 1 and 2 favorable to appellant, by finding that Smith had not agreed to ac-

cept payment of the premium in barber work and that he had notified plaintiffs of the cancellation of the policy prior to the fire, still plaintiffs were entitled to a judgment; because the undisputed evidence shows that appellant had actually been paid the full amount of the premium, had issued the policy and put same into full force and effect; and in its attempt to cancel the policy appellant had not paid or tendered to the insured the unearned portion of the premium or any part of it. We believe that appellant's contention must be overruled and that the contention of appellees should be sustained.

The undisputed evidence shows that Smith solicited the insurance and extended credit to appellees as to payment of the premium; that he charged appellees with the full amount of the premium, $18.25, as an obligation due him; that he actually paid the company the full amount of the premium, less his regular commission of 20%; that the policy was issued and put in full force and effect, on April 22, 1932, for a period of one year. The policy provides: "This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the pro rata premium."

In its efforts to show that its policy had been effectively cancelled, appellant showed by its agent and witness Smith in whose safe appellees had left their policy, that on or about October 1, 1932, he took the policy out of the safe and mailed it to the company, instructing it to cancel the policy and return to him the unearned portion of the premium, which the company did; that when he received the unearned portion of the premium from the company he applied it on his account against appellees, wrote and mailed to them a letter containing a statement of what he had done and notifying them that the policy was cancelled. Appellees testified that Smith had agreed to let them pay the premium in barber work; that they had paid him some money and had credited him each month with his barber bill; they denied receiving the notice which Smith testified he mailed to them, or that they had any notice of an attempt to cancel the policy prior to the fire. Smith admitted that appellees had paid him some money on their account due him for the premium and that he had taken credit each month for his barber work, except the month of September in which he says he did not have any barber work done by appellees. He denied that he had agreed to accept barber work in payment of the premium. He testified that he paid the full amount of premium to the company on July 1, 1932, less his commission, and that he charged appellees' account with him for the amount of the premium at the time the policy was issued. He testified that the reason he sent the policy to the company and had them to return to him the unearned portion of the premium was: "Because I had already remitted for the policy and they (appellees) wasn't paying the premium fast enough and I needed the money in my business."

Construing the cancellation provision of a fire insurance policy like that here under consideration, in the case of Phoenix Assurance Co. v. Munger Imp. Cotton-Mach. Mfg. Co., 92 Tex. 297, 49 S.W. 222, 225, the Supreme Court speaking through Judge Denman said: "* * * Upon the issue of cancellation, the evidence showed that the assured had paid a portion of the premium, and had given his notes to the agent for the balance, and the agent had paid the entire premium to the company, holding the notes of the assured as his individual property. When the notice of desire to cancel was given, just before the fire, there was no tender made to the assured of the unearned premiums, and we are therefore of the opinion that the cancellation was not effectual. It was of no concern to the company that the agent had seen fit, upon his own responsibility, to take the notes of the assured for the premiums, and advance the money to the company; and therefore the company could not cancel without returning or tendering the entire unearned premium to the assured, leaving him and the agent to settle the notes as between themselves."

There is no difference in legal effect where the agent has himself actually paid the premium to the company in consideration of the insured's parol obligation to pay him than where he has done so in consideration of the insured's note for the

amount. The agent has his right of action to collect his debt against the insured in either instance. But he has no right to cause their policy to be cancelled. It was no concern to the company that Smith has seen fit upon his own responsibility to extend the credit to the insured, pay the premium himself, and charge the insured with the amount as an account due him; and the company could not cancel without returning or tendering to the insured the unearned portion of the premium, leaving it to the insured and the agent to settle their private differences.

The judgment of the trial court will be affirmed.