**Harold WILSON, Appellant,**

v.

**Jo Dell GLANCY, Commonwealth Mortgage Company of America, L.P., State Farm Fire and Casualty Company, and Sparks Construction Company, Appellees.**

No. 79357.

Supreme Court of Oklahoma.

Dec. 12, 1995.

Supplemental Opinion on Denial of Rehearing March 12, 1996.

**12.** Title 12 O.S.Supp.1995 § 696.4(C), see note 6, supra.

M.D. Bedingfield, Stephanie L. Theban and Richard A. Gann, Riggs Abney Neal & Turpen, Tulsa, for Appellant, Harold Wilson.

George M. Miles, Tulsa, for Appellee, Jo Dell Glancy.

John Wimbish, Tulsa, for Appellee, Commonwealth Mortgage Company of America.

Neal E. Stauffer, Tulsa, for Appellee, State Farm Fire & Casualty Company.

Charles Sparks, Bixby, for Appellee, Sparks Construction Company.

HARGRAVE, Justice.

Certiorari to Court of Appeals, Temporary Lawyer Staffed Panel LXXX, to review an unpublished opinion of the Court of Appeals. The issue, on summary judgment, is whether a second mortgagee who bid in the full amount of his secured debt at the foreclosure sale in order to obtain his portion of the mortgaged property, subsequent to the fire loss, retains any insurable interest entitling him to proceeds from a fire insurance policy containing a standard mortgage clause.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

Jo Dell Glancy owned residential property that had two mortgages. The Commonwealth Mortgage Company held the first mortgage of $30,908.11 and Harold Wilson held the second mortgage of $10,000.00. Glancy had a homeowner's fire-insurance policy in effect, in which both mortgagees were covered by a standard or union mortgage clause. When Glancy was in default, Wilson, the second mortgagee, began foreclosure proceeding. On April 20, 1990, the foreclosure and order of sale were entered, The order directed that the property be sold by the Sheriff to the highest and best bidder, subject to the first mortgage. Wilson had in personam judgment against Glancy for $10,000.00 and in rem judgment of interest and cost and a first-priority judgment for $3,174.60, and also further interest and costs totaling $6,700.40. The total of all judgments was $19,875.00.

On August 23, 1990 the improvements on the property were damaged by fire. The undisputed amount of the damages was $43,171.85. Glancy and Wilson disputed as to who would own the insurance proceeds. Glancy had moved for a stay and to prevent the sale because, she argued, the property was covered by the insurance policy and Wilson would recover his judgment from the insurance proceeds. Wilson opposed the motion and prevailed.

On October 23, 1990, the property was sold at the Sheriff's sale, without any move to modify the court's order of April 20, 1990, and without any notice or mention of the fire damage, or the insurance policy. At the auction, Wilson bid on the property, subject to the first mortgage, for the full amount of the second mortgage indebtedness. That bid in the full amount of the his mortgage lien was accepted and ultimately confirmed by the court. The notice of the sale did not include any mention of the fire damage of the insurance policy.

After Wilson became the partial owner of the property, he argued that his second mortgagee lien survived the foreclosure and judicial sale so that he, as mortgagee, still retained his interest as a beneficiary under the insurance policy and thus was entitled to the insurance proceeds. Glancy argued that the sale of the property for the full amount of the mortgage constituted a satisfaction of the entire indebtedness secured by the mortgage and, therefore, extinguished any right Wilson would have to the insurance proceeds. The trial court granted summary judgment for Glancy and ordered the insurer to pay the first mortgage holder and pay Glancy the balance. The second mortgagee appealed and the Court of Appeals affirmed.

In *Willis v. Nowata Land and Cattle Co., Inc.*, 789 P.2d 1282 (Okl.1989), this court addressed a claim similar to the present fact pattern. In that case, the mortgagee purchased the foreclosed property at sheriff's sale for the entire amount owed by the mortgagor. The sheriff's sale to the mortgagee stood confirmed but the effect of the sale was stayed pending appeal. The day after confirmation, the premises were destroyed by fire. The trial court ruled the insurance proceeds should be paid to the mortgagee. The trial court also refused to give the mortgagor credit on the adjudicated mortgage debt for the amount of the mortgage proceeds. This Court held:

> Had the lender pressed for a deficiency judgment, the borrower clearly would not have been barred from counterclaiming for surplus or any other credit. Similarly, here, the borrower raises a genuine postconfirmation issue by its quest of the fire loss indemnity; if allowed to reduce the amount due lender on the judgment, the insurance proceeds would not so much alter the terms of the now confirmed judicial sale as they would create postconfirmation credit in borrower's favor.

> There are two types of insurance policy clauses which protect the mortgage lender against hazards of loss or damage to mortgaged premises: (1) the loss payable clause and (2) the standard mortgage clause.

> Under the loss payable clause the mortgage lender has a derivative right to recover the insurance proceeds, which is completely dependent upon the validity of mortgagor's (borrower's) claim against the

insurer, The mortgage lender's interest in the funds is treated as a security for his debt and ceases when that debt is extinguished.

The standard mortgage clause on the other hand, operates to create an independent contract between the insurer and the mortgage lender so as to protect the latter from the borrower's misconduct and to shield the lender's own interest in the property.

789 P.2d at 1285–1286 (footnotes omitted).

■ In the present case Wilson, the Mortgagee, claims that the insurance policy covering the property destroyed by fire contained a standard mortgage clause. The policy in the case at bar reads in pertinent part:

12. Mortgage Clause. The word "mortgagee" includes trustee:

a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

In *Fidelity–Phenix Fire Insurance Co. v. Cleveland,* 57 Okl. 237, 156 P. 638, 639 (1916) this Court held that a union or standard mortgage clause must not only contain the language that the loss should be payable to the mortgagee as his interest may appear, but must also contain the language which in essence states that the policy will not be invalidated by acts or neglect of the insured. This language creates an independent contract between the mortgagee and the insurer. See also, *Willis v. Nowata Land and Cattle Company, Inc.,* 789 P.2d 1282, 1285 [footnote 19] (Okl.1989); *Western Assurance Co. v. Hughes,* 179 Okla. 254, 66 P.2d 1056 (1936); *National Fire Insurance Co. v. Dallas Joint Stock Land Bank,* 174 Okla. 596, 50 P.2d 326 (1935). We find the mortgage clause in the present case to be a standard mortgage clause.

The question presented in this case was more specifically addressed in *National Fire Insurance Co. v. Finerty Investment Co.,* 170 Okla. 44, 38 P.2d 496 (1934). In that case the second Mortgagee attempted to recover on a fire insurance policy which contained a standard or union mortgage clause [1]. Mortgagee moved to foreclose on the second mortgage in 1926. Judgment of foreclosure was taken on the second mortgage on February of 1927. Order of sale was issued in October of 1927. In November of 1927, the mortgaged property was completely destroyed by fire. After the fire, the Mortgagee bid on the property at the foreclosure sale for approximately half of the second mortgage amount. At trial the court awarded the Mortgagee the full amount of the policy. On appeal this Court affirmed the trial court holding that the insurance policy contained a union or standard mortgage clause and was an independent contract that contemplated the possibility of foreclosure of the mortgage and afforded full protection to the mortgagee or its assigns at all stages involved in the foreclosure. This Court then held that under a standard or union mortgage clause:

The time of the fire and of the loss establishes the rights of the parties and the amount of the loss payable to the mortgagee or its assigns up to the sum fixed in the policy. [Citing *Savarese v. Ohio Farmers' Insurance Co.,* 260 N.Y. 45, 182 N.E. 665 (1932).]

38 P.2d at 498.

■ The body of case law that permits the mortgagor to collect insurance proceeds under similar instances of loss have dealt with insurance policies that contained loss payee

---

1. Under a policy provision making insurance payable to the mortgagee as his interest may appear, a "simple loss payable clause" or an "open loss payable clause" is to be distinguished from a standard or union clause. The simple clause merely provides, in effect, that the proceeds of the policy shall be paid first to the mortgagee to the extent of his interest. Under a loss payable clause, a mortgagee's only right is to be repaid money it loaned and to have the security of the value of the un-

burned mortgaged property as collateral for the debt . . .

The standard or union clause is somewhat more specific than the loss payable clause in that it provides, in addition to having the proceeds paid to the extent of the mortgagee's interest, that the mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner.

46A C.J.S. Insurance § 1404.

clauses rather than a standard or union mortgage clause[2]. Under such policies, the mortgagee's interest in the insurance proceeds is treated as a security for his debt and ceases when that debt is extinguished. See, *Willis v. Nowata Land and Cattle Company, Inc.,* 789 P.2d 1282, 1286 (Okl.1989). Had the mortgage clause in the present case been a loss payee clause, then the act of purchasing the property at the sheriff's sale would have extinguished the debt and the mortgagee would have been barred from recovery of the insurance proceeds. See, *Aetna Insurance Co. v. O.E. Woods Lumber Co.,* 182 Okl. 65, 76 P.2d 273, 275–276 (1938).

Also inherent in the present case was the mortgagor's right to redeem the property which would have entitled the mortgagor to the insurance proceeds. The mortgagor may not be divested of title until the right to redeem is extinguished by foreclosure decree and foreclosure sale. *Coursey v. Fairchild,* 436 P.2d 35, 39 (Okl.1967) The right to redeem is defined by 42 O.S.1991, § 18, which reads:

> Every person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed.

Furthermore, the right to redemption is not foreclosed until the sheriff's sale is confirmed. *Mills v. Reneau,* 411 P.2d 516, 520 (Okl.1965). Hence, the mortgagor has a right to discharge the debt prior to the confirmation of the foreclosure and, if discharged, the lien and entire estate is restored as if the mortgage never existed. See, *Sooner Federal Savings and Loan v. Oklahoma Central Credit Union,* 790 P.2d 526, 528 (Okl. 1989); *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925, 928 (Okl.1982). There is no evidence in the present case that the mortgagor ever attempted to redeem the property. The rights of the mortgagor to redeem the property were divested in the present case when the sheriff's sale was confirmed. Therefore, the mortgagor is not entitled to any of the insurance proceeds[3]. Had the price received at the sheriff's sale for foreclosed property exceeded the debt secured by that property, the money over and above what was owed to the creditor would not be retained by the creditor, but would, in fact, be returned to the debtor[4]. That is not the scenario in the present matter. The insurance policy in the present case was of the type designed to protect the mortgagee's interest in the payment of the debt owed on the property, even through foreclosure. The

**2.** *Calvert Fire Insurance Co. v. Environs Development Corp.,* 601 F.2d 851 (5th Cir.1979); *Rosenbaum v. Funcannon,* 308 F.2d 680 (9th Cir.1962); *Mann v. Glens Falls Insurance Co.,* 541 F.2d 819 (9th Cir.1976); *Insurance Co. of North America v. Citizens Insurance Co. of New Jersey,* 425 F.2d 1180 (7th Cir.1970); *Fireman's Fund Mortgage Corp. v. Allstate Insurance Co.,* 838 P.2d 790 (Ala.1992); *Hellman v. Capurro,* 92 Nev. 314, 549 P.2d 750 (1976); *Lembo v. Parks,* 6 Mass. App. 850, 372 N.E.2d 1316 (1978); *Campagna v. Underwriters at Lloyd's London,* 549 S.W.2d 17 (Tex.Civ.App.1977); *Smith v. General Mortgage Corp.,* 73 Mich.App. 720, 252 N.W.2d 551 (1977); *Lutheran Brotherhood v. Hooten,* 237 So.2d 23 (Fla.App.1970); *Nationwide Mutual Fire Insurance Co. v. Wilborn,* 291 Ala. 193, 279 So.2d 460 (1973); *Whitestone Savings & Loan Ass'n v. Allstate Insurance Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971).

**3.** 46A C.J.S. § 1404 states:
> ... if a loss occurs after the mortgage has been foreclosed, the mortgagor is entitled to the proceeds of the insurance during the period of redemption, even if the mortgagee is the purchaser at the foreclosure sale; and, where the

> mortgagee receives the proceed, if the mortgagor redeems, he is entitled to have the proceeds applied pro tanto on the redemption, or to recover the insurance collected and held by the mortgagee.
> However, a policy containing a standard or union mortgage clause contemplates the possibility of a foreclosure and provides full protection to the mortgagee during a foreclosure, and the mortgagee in such a case is entitled to the proceeds of the policy if the mortgagor fails to redeem the property, although the mortgagee is the purchaser at the foreclosure sale, and insurance proceeds, plus the value of the remaining property, exceed the amount of the mortgage debt.

See also, 5A *Appleman, Insurance Law and Practice,* § 3403.

**4.** Title 12 O.S.1991, § 773. reads:
> If, on any sale made as aforesaid, there shall be in the hands of the sheriff or other officer more money than is sufficient to satisfy the writ or writs of execution, with interest and costs, the sheriff or other officer shall, on demand, pay the balance to the defendant in execution.

second mortgagee in this matter was named in the policy as a beneficiary under a standard mortgage clause. The mortgagor, Glancy, at no time attempted to redeem the property. The second mortgagee suffered a loss and is entitled to the insurance proceeds. Therefore, the grant of summary judgment was in error under the law of Oklahoma and the second mortgagee, Wilson, is entitled, as a matter of law, to the insurance proceeds and this case is remanded with instructions to enter judgment in Wilson's favor for the insurance proceeds as his interest may appear.

**CERTIORARI PREVIOUSLY GRANTED; TEMPORARY LAWYER STAFFED PANEL LXXX COURT OF APPEALS OPINION VACATED; TRIAL COURT'S GRANTING OF SUMMARY JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS.**

All Justices concur.

ORDER ON REHEARING AND SUPPLE-
 MENTAL OPINION ON MOTION
 FOR ATTORNEYS FEES AND
 COSTS

SUMMERS, Justice.

Appellee Glancy's petition for rehearing is denied. Appellant Wilson seeks appeal-related attorney's fees and costs, and we address that request.[1]

I.

Appellant seeks an attorney's fee under several statutes. First he cites 20 O.S.1991 § 15.1. This statute authorizes an attorney's fee when the appeal is "without merit." It has no applicability to this case. *Harsha v. Maremont Corp.*, 784 P.2d 1070, 1074 (Okla. 1989). Wilson himself was the appellant.

Next, Appellant relies upon 12 O.S.1991 § 936. Section 936 provides for attorney's fees in actions on an open account, note, bill, negotiable instrument, or contract for the purchase or sale of goods, services, etc., but not for this declaratory judgment action.

This declaratory judgment action does not include a request for relief within the category of actions listed in § 936.

 Appellant argues that this is but a continuation of a foreclosure action, in apparent reference to 42 O.S.1991 § 176. That section allows attorney's fees in an action to enforce a lien. *First Community Bank of Blanchard v. Hodges*, 907 P.2d 1047, 1054 (Okla.1995). In *Blanchard,* as in the case before us, the plaintiff sought declaratory relief. However, in *Blanchard* the plaintiff Bank also sought to enforce its lien. Bank sought an order directing the payment of proceeds from a sheriff's sale to the Bank to satisfy its lien.

In the present case the right to the fire insurance proceeds was derived from a standard mortgage clause, an independent contract between the insurer and mortgage lender. *Willis v. Nowata Land and Cattle Co., Inc.*, 789 P.2d 1282, 1285–1286 (Okla. 1989). This declaratory judgment action was to enforce that contract right and not to enforce a lien.

 In the alternative Appellant relies upon 12 O.S.1991 § 928 for attorney's fees. This statute allows recovery of costs of course to the plaintiff in successful actions for the recovery of money or recovery of specific real or personal property. Statutory allowance of costs does not include attorney's fees, unless stated otherwise. *Butcher v. McGinn*, 706 P.2d 878, 882 (Okla.1985). See *General Motors Acceptance Corp. v. Carpenter,* 576 P.2d 1166 (Okla.1978) and the discussion of 12 O.S.Supp.1977 § 1580, a statute that specifically allowed attorney's fees to be taxed as costs. Section 928 does not specifically authorize attorney's fees, and thus is not authority for granting such fees. *Butcher v. McGinn, supra.*

 Finally, Appellant cites 12 O.S.1991 § 1655. Section 1655 says: "Further relief based upon a determination of rights, status, or other legal relations may be granted whenever such relief becomes necessary and proper after the determination has been

---

1. Gwen'Elin A. Pruden, Personal Representative of the Estate of Harold Wilson, deceased, is now the moving party herein. We refer to Wilson in this writing for the sake of consistency with the opinion.

made." Although this section authorizes other forms of relief it does not specifically authorize awarding attorney's fees. In the declaratory judgment action of *Case–Aimola Properties, Inc. v. Thurman*, 752 P.2d 1120 (Okla.1988) we stated that mandamus could issue as consequential relief from a declaratory judgment. *Id.* 752 P.2d at 1123. We then denied attorney's fees because such fees are ordinarily not recoverable in the absence of a statute or contract. *Id.* We conclude that attorney's fees are not recoverable in this declaratory judgment action as further relief pursuant to § 1655.

Appellant Wilson's motion for an appeal-related attorney's fee is denied.

## II.

■■■■ Appellant also seeks costs. He requests reimbursement for such items as photocopies, delivery service, telephone calls, Westlaw research, and postage. We have explained that the cost of making copies is not a recoverable cost. *Oklahoma Turnpike Authority v. New*, 853 P.2d 765, 765 (Okla. 1993); *Sunrizon Homes v. American Guaranty Investment Corporation*, 782 P.2d 103, 109 (Okla.1988). In *Oklahoma Turnpike Authority v. New, supra*, we said that the expenses of mailing, mileage, long distance telephone calls, telefax expenses and postage are part of the overhead, and are not recoverable as costs. *Id.* 853 P.2d at 767.

■■■■ He also seeks recovery of a $100.00 filing fee. The filing fees required by 20 O.S.1991 § 15 (as amended in 1993), and 20 O.S.1991 § 30.4 are recoverable pursuant to 12 O.S.1991 § 978 by the successful appellant. *Sunrizon Homes*, 782 P.2d at 109. A *sua sponte* examination of this Court's docket shows a filing fee of $100.00 paid by Appellant on March 31, 1992. It also shows a filing fee of $100.00 with Appellant's petition for certiorari, filed January 6, 1994. Wilson's motion for costs is granted only to the extent of $200.00 to be recovered against Glancy, and otherwise denied.

All Justices concur.